**E.R. 3**

1  Elaine M. Seid, Esq., SBN 72588
   MCPHARLIN, SPRINKLES & THOMAS LLP
2  Ten Almaden Blvd., Ste. 1460
   San Jose, CA 95113
3  Telephone: (408) 293-1900

4  Helena K. Kobrin Esq., SBN 152546
   MOXON & KOBRIN
5  3055 Wilshire Blvd., Ste. 900
   Los Angeles, CA 90010
6  Telephone: (213) 487-4468

7  Samuel D. Rosen, Esq.
   75 East 55th Street, 12th Floor
8  New York, New York 10022-3205
   Telephone: (212) 318-6000
9
   Attorneys for Creditor
10 RELIGIOUS TECHNOLOGY CENTER

11

12                UNITED STATES BANKRUPTCY COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14
                                    ) CASE NO.: 98-51326 ASW-7
15                                  ) (Chapter 7)
   In re H. KEITH HENSON,           )
16                                  )
        Debtor.                     )
17  _____) Adv. No. 03-5131
                                    )
18 Religious Technology Center,     )
                                    )
19         Plaintiff,               )
                                    ) DATE: May 6, 2003
20 v.                               ) TIME: 3:00 p.m.
                                    ) CTRM: Hon. Arthur Weissbrodt
21 V. Arel Lucas, an individual, as wife of )
   the Debtor; Carol Wu, as Chapter 7 )
22 Trustee,                         )
                                    )
23         Defendant.               )
   _____
24

25    **DECLARATION OF HELENA K. KOBRIN IN SUPPORT OF
      MOTION TO COMPEL APPEARANCE OF V. AREL LUCAS
26           AT DEPOSITION, TO STAY THE CASE
      UNTIL SHE APPEARS, AND FOR AN AWARD OF EXPENSES**

27

28

I, Helena K. Kobrin, hereby declare:

1. I am one of the attorneys of record for plaintiff Religious Technology Center ("RTC"). I have personal knowledge of the facts set forth below, and if called upon to do so, could and would testify competently thereto.

2. The deposition of Arel Lucas was noticed for June 4, 2003. Prior to that date, I contacted her attorney, Howard Hibbard, to find out if she was going to appear. I sent him a letter confirming his statement that she would not. A true and correct copy of that letter is Exhibit A hereto.

3. I recently spoke with Ms. Lucas's new attorney, Wayne Silver, reminding him that her deposition had been noticed and asking him to produce her for her deposition. He refused, responding that there was nothing new on which to depose her. I also informed him that Ms. Lucas had never been deposed on any of the issues related to her joint vs. community ownership of the real property that was sold by the Trustee, but Mr. Silver still refused to comply with RTC's deposition notice.

4. When RTC earlier took Ms. Lucas's section 341 examination, the case was in chapter 13, and there had been no effort to sell the house. The debtor had proposed a chapter 13 plan which did not involve any use of the house to fund it. The questions posed to Ms. Lucas therefore did not address the issues related to a determination of whether her claimed "joint tenant" ownership of the real property in Palo Alto truly described the actual ownership arrangement.

I declare under penalty of perjury that the facts stated herein are true and correct. Executed in Los Angeles, California the 6th day of April 2004.

/s/ Helena K. Kobrin
―――――――――――――
Helena K. Kobrin

DECLARATION OF HELENA K. KOBRIN IN SUPPORT OF MOTION TO COMPEL APPEARANCE OF V. AREL LUCAS AT DEPOSITION, TO STAY THE CASE UNTIL SHE APPEARS, AND FOR AN AWARD OF EXPENSES

2

KENDRICK L. MOXON\*
HELENA K. KOBRIN\*
AVA M. PAQUETTE

\* ALSO ADMITTED IN
THE DISTRICT OF COLUMBIA
† ALSO ADMITTED IN
FLORIDA

**MOXON & KOBRIN**
ATTORNEYS AT LAW
3055 WILSHIRE BOULEVARD
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

OF COUNSEL
──────────
JEANNE M. GAVIGAN

May 29, 2003

## VIA TELEFAX AND U.S. MAIL

Howard Hibbard, Esq.
22693 Hesperian Blvd., Suite 210
Hayward, CA 94541

Re: *Religious Technology Center v. Lucas*

Dear Mr. Hibbard:

    This letter confirms our telephone conversation earlier today, in which I called to ask you whether Ms. Lucas would be appearing for her deposition that we noticed for June 4, 2003. You informed me that she would not.

                                              Very truly yours,

                                              Helena K. Kobrin

HKK:gs

cc: Elaine M. Seid, Esq.
    Samuel D. Rosen, Esq.
    Stanley Zlotoff, Esq.
    Judith Suelzle, Esq.

**EXHIBIT A**

E.R. 4

```
                    UNITED STATES BANKRUPTCY COURT
                    NORTHERN DISTRICT OF CALIFORNIA
                          (SAN JOSE DIVISION)
                                                        COPY
In re:

HOWARD KEITH HENSON,              CaseNo. 98-51326-ASW

                                  Chapter 7

                                  San Jose, California
                                  November 9, 2004
                                  3:59 p.m.
          Debtor.
                              /
```

TRANSCRIPT OF PROCEEDINGS
a) RENEWED MOTION TO DISMISS CHAPTER 7 CASE
BY RELIGIOUS TECHNOLOGY CENTER
b) MOTION TO VACATE ORDER APPOINTING ATTORNEYS FOR
CHAPTER 7 TRUSTEE BY RELIGIOUS TECHNOLOGY CENTER
c) OPPOSITION BY TRUSTEE
d) MOTION TO DISMISS CHAPTER 7 FOR NON-APPEARANCE
OF H. KEITH HENSON BY RELIGIOUS TECHNOLOGY CENTER
e) OPPOSITION BY DEBTOR
f) APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES BY ATTORNEY FOR DEBTOR
g) OBJECTION BY RELIGIOUS TECHNOLOGY CENTER


BEFORE THE HONORABLE ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

1  inference that he had the same subject of intent when he
2  violated two later District Court orders, forbidding
3  further disclosure and publication? Since the creditor
4  already has the Debtor's deposition testimony on tape on
5  these issues, it's not apparent to the Court that the
6  creditor needs another deposition about the Debtor -- from
7  the Debtor about his state of mind when he infringed the
8  copyright.
9        If creditor actually wants to do discovery in the
10 adversary, the creditor should either send interrogatories
11 or file a motion to compel the deposition and demonstrate
12 why the creditor needs a deposition under the circumstances
13 of this matter.
14       We're now to the motion to compel appearance of
15 Lucas. Lucas is correct. The motion to compel is
16 equivalent to a motion under Federal Rule of Civil
17 Procedure 56(f) since it's brought while a summary judgment
18 motion is pending, and Lucas is right about the showing
19 that has to be made for a 56(f) motion. But RTC has made
20 that showing. RTC is right that the applicable
21 presumptions are rebuttable by a showing of intent.
22       Both the Bankruptcy Appellate Panel version of
23 Summers and the Ninth Circuit's decision affirming explain
24 how it works. Lucas' pleadings sound at times as if the
25 issue here were transmutation of joint property to

1  community property, which can only be affected by a writing
2  and not by conduct. But that's not the issue. RTC's point
3  is that the parties' conduct after they acquired the
4  property may arguably be seen to suggest that they took the
5  property with an intent to hold it and treat it as
6  community property, despite the fact that the deed says
7  joint, and despite the existence of the pre-nuptial, which
8  arguably also is somewhat at odds with some of their post-
9  marital conduct, such as pooling assets and liabilities.
10           Intent is a legitimate area of discovery. Lucas
11 doesn't deny that the discovery during the Chapter 13 case
12 did not address this issue, nor does she deny that there
13 was no reason to address this issue when that discovery was
14 taken. That discovery was taken in connection with RTC's
15 objection to confirmation, and the Chapter 13 Plan didn't
16 call for the property to be sold or otherwise raise the
17 issue of whether it was held in joint tenancy or as
18 community property.
19           RTC admits that it received information during
20 prior discovery that bears on the spouse's intent. In
21 fact, it relies on that information to support its theory
22 that the joint deed does not truly reflect the manner in
23 which the spouses intended to hold title when they acquired
24 the property. But that information was general information
25 about how the spouses handled their finances, rather than

1 responses to specific questions about their intent toward
2 ownership of the home.
3 　　　　It seems unlikely that additional discovery on
4 that point would yield much, but the subject is clearly
5 relevant because the issue of intent can be dispositive.
6 As for interrogatories versus a deposition, RTC is correct
7 that written discovery may not be the equivalent of a
8 deposition where credibility is an issue. On the other
9 hand, RTC doesn't deny that it examined Lucas for 16 hours
10 over three days during the Chapter 13 case and cross-
11 examined her at length during the trial of RTC's motion to
12 dismiss.
13 　　　　Those encounters did not specifically deal with
14 the spouses' intent with respect to how title to their home
15 was held, but they certainly seemed to have given RTC about
16 Lucas' general credibility, and they say over and over
17 again that she isn't credible. So what's to be gained by
18 seeing her reaction to new questions about the intent
19 issue, and wouldn't it just be cumulative of the bad
20 impression that RTC has already formed with respect to
21 Lucas' credibility.
22 　　　　Since RTC had very extensive experience with
23 personal questioning of Lucas, the difference between
24 interrogatories and deposition is greatly reduced, perhaps
25 eliminated altogether. So the Court believes that

1  interrogatories should be sufficient, and they should be
2  tailored to the limited issue of intent, which RTC says is
3  all that RTC wants to know about and which is the only
4  question in this case.
5       And then if Lucas' responses to the
6  interrogatories make additional questions necessary, RTC
7  could take further leave. Now, this is a very close
8  question for me, because intent is a factual issue and
9  intent was not the subject of the prior deposition. So I
10 will allow, if RTC insists on a deposition, despite what
11 I've said, if RTC wants to take a deposition of Ms. Lucas,
12 I will allow it.
13      RTC can pay what Ms. Kobrin estimates to be the
14 cost for Ms. Lucas to come to San Jose. I have no counter
15 proof, except that it seems to me that a hundred dollars
16 should be added to that because Ms. Kobrin doesn't include
17 the taxis to and from the airport and the taxis to and from
18 the deposition. So I believe her figure was 500 or $550.
19 Add a hundred dollars to that to cover tips and taxis back
20 and forth, and if RTC wants to take that deposition, even
21 though I don't think it's necessary under the
22 circumstances, I will allow RTC to take that deposition
23 with payment in advance of those travel expenses. I
24 don't -- the deposition should certainly be no more than
25 six hours, at the absolute outset.

31

1  in writing, if they're going to do it. If they're going to
2  proceed by interrogatories, then they can notify you within
3  ten days that they're going to do that, in writing.
4          The motion for summary judgment is continued to
5  February 24, at 3:00 o'clock.
6          I don't want any discussion of anything I've
7  said, Mr. Rosen. If you want to talk about a procedural
8  issue, fine, but I told you at the beginning I didn't want
9  to have any discussion. I was going to rule.
10         MR. ROSEN: May I ask one question?
11         THE COURT: Sure.
12         MR. ROSEN: I think I've been practicing law far
13 longer than you've been a judge. I have never ever seen a
14 case where one party is ordered to pay travel costs for a
15 deposition of a party, not of a witness, of a party, and I
16 don't --
17         THE COURT: I don't think you need the
18 deposition.
19         MR. ROSEN: And I beg Your Honor's -- I beg --
20 the only question I have is, does Your Honor have any
21 authority for that?
22         THE COURT: I don't think you need the
23 deposition. I told you I don't think you need it.
24         MR. ROSEN: I know, but you said that if I wanted
25 it, I could pay for it. And my question is very simple.

32

1   Does Your Honor have any case from any court in this
2   country that says that one party, as a condition of getting
3   a deposition, pays for the travel costs of a party? If
4   not, then that's fine. I was just curious about it, Judge.
5           THE COURT: I told you that my ruling would be
6   that you don't need a deposition. You should do
7   interrogatories first. If you have a question about the
8   authority to do that, then I would rather go back to the
9   other rule. You can only take an interrogatory.
10          MR. ROSEN: No, I'll take your ruling, Judge. I
11  just want you to understand --
12          THE COURT: No, No. You can only -- fine. You
13  take --
14          MR. ROSEN: -- interrogatories are a very poor
15  substitute because interrogatory answers are not given by
16  the witness, by the party; they're given by counsel and by
17  Mr. Henson in his hideaway in Canada, and I only asked a
18  question. If you tell me that you don't have any
19  authority, it's fine.
20          THE COURT: I haven't researched it, Mr. Rosen.
21          MR. ROSEN: We will exercise -- we will exercise
22  the prerogative to take the deposition. The only question
23  I had of you was if you had any authority, of any case in
24  this country ever ordering a party to pay another party's
25  deposition travel costs. And if you don't; you don't.

33

1  THE COURT: Mr. Rosen, the request to take a
2  deposition is denied. You can first do interrogatories and
3  then if you need a deposition, you'll move to compel.
4  MR. ROSEN: We need a deposition.
5  THE COURT: After you've taken the
6  interrogatories.
7  MR. SILVER: Your Honor, before we conclude, is
8  the Court going to put any limitation on the number of
9  interrogatories? I'm just concerned with what's gone on in
10 this case here that I'm going to be served with 450
11 interrogatories. I did file a counter-motion for a
12 protective order.
13 THE COURT: What do you think is reasonable?
14 What number?
15 MR. ROSEN: There is no number because the
16 interrogatory answers are not provided by Ms. Lucas. We
17 have had this --
18 THE COURT: Pick a number. I'm going to rule.
19 MR. ROSEN: No, I'm not going to pick a number.
20 THE COURT: Don't pick a number. Fifty.
21 MR. SILVER: Very well, Your Honor.
22 THE COURT: Court is adjourned.
23 (Whereupon, the proceedings are concluded at 4:39
24 p.m.)
25

34

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a correct transcript from the digital sound recording of the proceedings in the above-entitled matter.

DATED: December 17, 2004

By: _____
    Jo McCall